UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| STATE OF INDIANA, ex rel. CHRIS NAYLOR, INDIANA SECURITIES COMMISSIONER, | ) ) ) ) | |
| Plaintiffs, | ) ) | 1:09-cv-1506-SEB-TAB |
| vs. | ) ) | |
| INDIANA STATE TEACHERS ASSOCIATION, ISTA INSURANCE TRUST, ISTA FINANCIAL SERVICES CORPORATION, ISTA WELFARE BENEFITS TRUST, ISTA ADMINISTRATIVE SERVICES CORPORATION, and NATIONAL EDUCATION ASSOCIATION, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER ADDRESSING PENDING MOTIONS**

In 1985, Indiana State Teachers Association ("ISTA")[1] established the ISTA

Insurance Trust ("Trust") for the purpose of providing certain insurance products,

including long-term disability and health arrangements, to ISTA members, who are

teachers and school employees throughout Indiana.  The products and arrangements

offered by the Trust were marketed and administered by ISTA Financial Services

Corporation and ISTA Administrative Services Corporation.  Each of these entities has

---

[1]Defendant Indiana State Teachers Association is an Indiana nonprofit corporation with
its headquarters and principal place of business in Indianapolis, Indiana.

been named a Defendant in the present action.[2]

The health insurance plan included a feature called a "collaborative surplus reserve"[3] Program, or "CSR Program."  Compl. ¶ 16.  Under the CSR Program, a school district participating in the Trust would be credited with a "balance," if "the total amount of payments by the school district to ISTA exceeded the amount of claims paid, plus administrative expenses and other overhead amounts assessed by ISTA."  Id.  According to the Complaint, Defendants represented to school districts participating in the CSR program that, to the extent money paid exceeded the amount of claims paid, a school district could "receive a return on the CSR balances, calculated as a return on investment by ISTA and based, in part, on the return earned by ISTA and the [Trust] on their investments."  Compl. ¶ 17.  In certain cases, school districts were promised guaranteed rates of return.  Compl. ¶¶ 17, 18.

Plaintiff Indiana Securities Commissioner Chris Naylor ("the Commissioner"),[4] has brought the present action on behalf of the State of Indiana asserting that the ISTA Entities failed to disclose material facts with regard to the CSR Program, including

_____

[2]Defendants ISTA Financial Services Corporation and ISTA Administrative Services Corporation are subsidiaries of ISTA, each with its principal place of business in Indianapolis, Indiana.

[3]Plaintiff also refers to this as the "claims stabilization reserve."

[4]The Commissioner directs the Securities Division of the Indiana Secretary of State's Office and is charged with administering and enforcing the Indiana Uniform Securities Act ("Act").  The Act specifically empowers the Commissioner, among other things, to bring actions in the name and on behalf of the State of Indiana against persons violating the Act.

among other things representing that the Trust was financially sound at a time when it was not.  According to the Commissioner, Defendants failed to disclose that, because of ultimately unsuccessful investments made by the ISTA Entities, the Trust sustained substantial losses and thus did not have sufficient assets to meet its obligations related to the health and long-term disability plans.  Compl. ¶ 22.

As a result of this financial collapse, the National Education Association ("NEA") has assumed control of the operation, administration, and assets of the ISTA Entities. Compl. ¶ 24.[5]  On May 20, 2009, the NEA took over the day-to-day operations of ISTA and installed Edward Sullivan as the acting chief executive officer and sole trustee of the ISTA Trust.  Compl. ¶¶ 10, 11.

The Complaint advances four counts stemming from Defendants' alleged wrongdoing associated with the mismanagement of the Trust: (1) the unlawful sale of unregistered securities, pursuant to Ind. Code § 23-19-3-1(3); (2) the unlawful transaction of business as an investment adviser without registering as such, pursuant to Ind. Code § 23-19-4-4(a); (3) the knowing supervision of unregistered investment adviser activity, pursuant to Ind. Code § 23-19-1-2(16); and (4) fraudulent misrepresentation in connection with the offer, sale, or purchase of a security, pursuant to Ind. Code § 23-19-5-1.

The Commissioner originally filed the Complaint in Marion Superior Court.

---

[5]Defendant National Education Association is a national professional employee organization representing public school teachers, support personnel, and others, with its principal place of business located in Washington, DC.

3

Thereafter, the NEA, with the consent of all other Defendants, removed the case to this Court, on the ground that the NEA is a federally chartered corporation, "thus conferring federal jurisdiction" over the lawsuit.  See Notice of Removal ¶ 2 ("Because there exists federal jurisdiction over the action against NEA, the lawsuit is removable to federal court under 28 U.S.C. § 1441(a) and (b)").

Two overarching issues are now before the Court: whether, as Defendants contend, the Complaint should be dismissed in its entirety; and whether, as the Commissioner requests, Defendants should be placed in receivership and subjected to an accounting.[6]

## *Legal Analysis*

**I.     *Motion to Dismiss*[7]**

**A.     *Subject Matter Jurisdiction and Standing***

Defendants contend first that this action must be dismissed both because the Commissioner lacks standing to bring the claims and because the Court lacks subject matter jurisdiction over the claims.  Both challenges arise under Rule 12(b)(1), given that

---

[6]On December 14, 2009, the ISTA Entities filed a Motion to Dismiss [Docket No. 18] seeking dismissal on two grounds: (1) lack of subject matter jurisdiction on the theory that the CSR Program is not a "security" as defined by state and federal law; and (2) failure to meet the pleading requirements of Federal Rules of Civil Procedure 9(b) and 8(a).  On February 8, 2010, Plaintiff filed a Motion to Appoint Receiver/Conservator and For an Accounting [Docket No. 44], arguing that the complexity of the funds underlying this matter necessitates the appointment of a receiver and the imposition of a court-ordered accounting.

[7]Plaintiff has filed a Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss.  Because Defendants' Reply contains newly introduced material, Plaintiff's Motion for Leave is GRANTED.

a challenge to standing implicates issues of subject matter jurisdiction.  Simmons v.
Interstate Commerce Comm'n, 900 F.2d 1023, 1026 (7th Cir. 1990).  Although
Defendants have crafted these theories separately, they both distill into a single issue:
does the CSR Program qualify as a "security," as defined by the relevant law.  If the CSR
Program does not qualify as a security, then the claims stated in the Complaint are not
cognizable.

 In considering a motion to dismiss for lack of subject matter jurisdiction, a court
"must accept the complaint's well-pleaded factual allegations as true and draw reasonable
inferences from those allegations in the plaintiff's favor."  United Transportation Union v.
Gateway Western Railway Co., 78 F.3d 1208, 1210 (7th Cir. 1996).  Nonetheless, to be
sufficient, the Complaint cannot rely on "mere labels and conclusions" to articulate the
factual basis for the claims contained therein.  Bissessur v. Indiana Univ. Bd. of Trustees,
581 F.3d 599, 602-04 (7th Cir. 2009).  According to Defendants, the Commissioner's
allegations that the insurance arrangements at issue were "securities" because they
amounted to "an investment product" which promised a "return" are nothing more than a
matter of "mere labels and conclusions," thus warranting dismissal.

 Defendants' characterization of the CSR Program as a non-security relies largely
on documents Defendants themselves have submitted with their motion, none of which
were referenced in the Complaint.  Defendants correctly note that documents that are
"central to" the securities claims alleged may be considered at the dismissal stage, even if
they were not attached to the Complaint.  E.g., Venture Assocs. Corp. v. Zenith Data Sys.

5

Corp., 987 F.2d 429, 431 (7th Cir. 1993).  They have not demonstrated clearly, however, that the proffered documents are "central to" the securities claims alleged.  Moreover, to be considered at this stage, typically the underlying documents must at least have been referenced in the Complaint.  E.g., Id.  The Complaint contains no reference to the documents proffered by Defendants, and in addition those documents are not demonstrably "central to" the Commissioner's claims.  Thus, the Court shall refrain from considering them in assessing the sufficiency of the Complaint's allegations.[8]

Therefore, we turn to a review of the allegations contained in the Complaint to determine whether the Commissioner has pled a cause of action consisting of more than "mere labels" by showing at least at this preliminary stage of the case that the CSR Program constituted a security.  The Commissioner brought this action under the Indiana Uniform Securities Act, which includes within the definition of a security an "investment contract" and a "certificate of interest or participation in a profit-sharing agreement."  Ind. Code § 23-19-1-2(28).  An "investment contract," under this statutory scheme, includes "an investment in a common enterprise with the expectation of profits to be derived

---

[8]Ultimately, because the proper evaluation of a securities claim "cannot be accomplished without a thorough examination of the representations made by defendants as the basis of the sale," we conclude that a final determination of whether the CSR Program in this case actually qualifies as a "security" under the relevant statutes is a question of fact that must be left for summary judgment or trial.  Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1039 (10th Cir. 1980) (citations omitted); see also Marine Bank v. Weaver, 455 U.S. 551, 561 n.11 (1982); Simon Oil Co. v. Norman, 789 F.2d 780, 781 (9th Cir. 1986).  Further, the documents submitted by Defendants do not demonstrably represent the full scope of the facts necessary to make a merits determination.  Indeed, the Commissioner has pointed to many remaining factual disputes as to the nature of the program that those documents do not address.  Therefore, we conclude that consideration of the documents proffered by Defendants would be inappropriate at this stage.

primarily from the efforts of a person other than the investor."  Ind. Code § 23-19-1-2(28)(D).

In applying this statutory definition, Indiana courts have borrowed two approaches from federal securities law.  The first is commonly referred to as the <u>Howey</u> test, which states that an investment contract exists "whenever a person (1) invests money (2) in a common enterprise (3) premised upon a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others."  <u>Securities and Exchange Comm'n v. W.J. Howey Co.</u>, 328 U.S. 293, 301 (1946); <u>Poyser v. Flora</u>, 780 N.E.2d 1191, 1197 (Ind. Ct. App. 2003).

In addition to adopting the venerable <u>Howey</u> test, the Indiana Secretary of State, who is empowered by law to define terms and interpret the meaning of undefined terms in enforcing Indiana's securities laws, has issued an opinion stating that the definition of "security" should be construed liberally in order to prevent fraud.  In that regard, our former colleague, Judge Hamilton, previously explained:

> In 1993, the Secretary issued a policy statement in an effort to define "investment contract," the broad term used to prevent sophisticated efforts to avoid the substance of securities laws.  The Secretary determined that an investment contract includes, but is not limited to:
>
> > i) Any investment in a common enterprise with the expectation of profit to be derived substantially through the managerial efforts of someone other than the investor; or
> >
> > ii) Any investment of money or money's worth in the risk capital of a venture with the expectation of some benefit to the investor where the investor has no direct control over the investment or policy decision of the venture.

Greentree Real Estate, LLC v. Bridger Commercial Funding, LLC, 2009 WL 1922086, at

*4 (S.D Ind. July 1, 2009) (Hamilton, J.).  Thus, in addition to the Howey test, Indiana

also applies the so-called "Risk Capital Test."  Id.

 In arguing that the CSR Program is not a security, Defendants attempt to expand

upon Howey and the Risk Capital Test by relying on the United States Supreme Court's

decision in United Housing Foundation, Inc. v. Forman, 421 U.S. 837 (1975) and our

Court's decision in Waldo v. Central Indiana Lutheran Retirement Home, et al., 1979 WL

1279 (S.D. Ind. Nov. 16, 1979), both of which deemed programs similar to the one in the

case at bar not to be securities.

 Forman involved arrangements under which individuals, in addition to paying rent,

bought stock in a housing cooperative.  One part of the arrangement provided that, if the

rent paid by a tenant exceeded the cooperative's expenses, the tenant "receive[d] the

return of the initial overcharge in the form of a rent rebate."  Forman, 421 U.S. at 856

n.21.  Another feature provided participants with an entitlement to a share of the

cooperative's income from commercial ventures.  Id. at 855-856.  The Court

distinguished this arrangement from a security interest, reasoning that, in contrast to

"cases [in which] the investor is 'attracted solely by the prospects of a return' on his

investment, . . . when a purchaser is motivated by a desire to use or consume the item

purchased . . . the securities laws do not apply."  Id. at 852-53 (quoting Howey, 328 U.S.

at 300).  The Forman Court, therefore, held "that the shares purchased     . . . d[id] not fall

within the 'ordinary concept of a security.'"  Id. at 848 (quoting Howey, 328 U.S. at 299).

In Waldo, the district court held, similarly, that an arrangement in which "life membership" agreements with a nursing home gave both the right to live in the home and an entitlement to interest on amounts paid did not constitute a "security," because the interest provision was merely a part of the broader arrangement. Waldo, 1979 WL 1279, at *2-3.

We note here, as an initial matter, that the federal definition of a security which controlled the results in both of the afore-referenced cases differs from the current Indiana statutory definition controlling the resolution of the case at bar. As our Court has previously recognized, "the Indiana definition of 'security' is somewhat broader than the federal definition, as demonstrated by B & T Distributors, Inc. v. Richle, 366 N.E.2d 178 (Ind. 1977)." Columbia Housing Partners SLP Corp. v. Camby Housing Partners LLC, 2002 WL 1760742, at *9 n.2 (S.D. Ind. July 29, 2002) (citations omitted) (McKinney, J.). This difference in the scope of the controlling terminology significantly undercuts Defendants' reliance on federal law.

Nonetheless, even accepting the definition as applied in Forman and Waldo, Defendants' argument falters. The federal definition under examination by those courts emphasized the motivation of the purchaser. Here, Defendants premise their contention that no security existed on the fact that the participating school districts were motivated solely by a desire to provide health benefits, and not by the prospect of a return in the form of the Trust's interest provision. However, Defendants provide no convincing rationale in support of this proffered motivation. In addition, this rationale has not been

9

tied to the allegations in the Complaint as a basis for its dismissal.

Indiana Code § 23-19-1-2(26)(A) provides that "a security given or delivered with, or a bonus on account of, a purchase of securities or any other thing is considered to constitute part of the subject of the purchase and to have been offered and sold for value." Thus, the appropriate inquiry in assessing the adequacy of the Complaint is not limited to the motivation of the participants in obtaining the underlying health arrangement, but includes as well the participants' motivation for choosing the ISTA plan over alternatives. It is conceivable that, in the case at bar, the school districts' primary motivation for choosing the Trust over other options was, in fact, the existence of the investment feature. Therefore, under <u>Forman</u> and <u>Waldo</u>, which holdings relied fundamentally on the purchaser's motivation in determining whether a security existed, the allegations contained in this Complaint sufficiently plead that a security existed.

Returning to the general definitions utilized under Indiana law, it is clear that the allegations in the Complaint suffice to describe and establish a program constituting a "security" arrangement.  This is clear based first on the fact that the allegations in the Complaint satisfy all the elements of the <u>Howey</u> test: the health arrangements were offered to and purchased by school districts, Compl. ¶¶ 1, 15, 16, 18; a common enterprise existed, Compl. ¶¶ 17, 19; the school districts were promised a return on their investments, Compl. ¶¶ 1, 17; which were based on the managerial efforts of others, Compl. ¶ 17.

Alternatively, the CSR Program qualifies as a security under the Risk Capital Test.

The Complaint alleges that the CSR Program constituted an "investment of money . . . with the expectation of some benefit," and that the investors, to wit, the school districts, maintained no actual direct control over the investment decisions involved.  <u>Greentree</u>, 2009 WL 1922086, at *4.  These allegations thus satisfy both tests for defining a security under Indiana law.

Accordingly, we hold that the Commissioner has successfully and sufficiently alleged the existence of a security as well as violations of Indiana Law relating to that security.  <u>See</u> Compl. ¶¶ 19, 20, 21.  Defendants' contention that the Complaint must be dismissed for failure to satisfy these requirements in the pleadings is therefore unavailing.

B.      *Dismissal For Failure to State a Claim*

Defendants also contend that portions of the Complaint are insufficient under the applicable pleading standards.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6).  <u>Id.</u>

A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 550 U.S. 544, 563 (2007) (citing

Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[T]he plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")).  In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant.  Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

1.      Count Four

        Defendants first target Count Four of the Complaint as failing to meet the standard set forth in Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging "fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake."  Fed.R.Civ.P. 9(b).  "Stated another way, where the alleged fraud involves a misrepresentation, Rule 9(b) requires the plaintiff to plead 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff . . . ."  Farmers & Merchants Bank v. Putnam, 2009 WL 1076198, at *7 (N.D. Ind. Apr. 20, 2009) (quoting Hefferman v. Bass, 467 F.3d 596, 601 (7th Cir. 2006)).  Pursuant to Indiana law, securities fraud claims such as those contained in count four are "grounded in fraud" and thus subject to 9(b)'s heightened standards.  McKinney v. State, 693 N.E.2d 65, 72 (Ind. 1998).

12

According to Defendants, because Count Four does not include the alleged misstatements and omissions with the requisite particularity, and because it does not fully distinguish any one of the "ISTA Entities" from any other with respect to specific allegations, the claim fails to meet the heightened pleading standard for fraud claims. See Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990). Contrary to Defendants' assertion, however, the Complaint in our view does contain sufficient particularity as to the alleged misrepresentations and material omissions, including: (1) that Defendants failed to disclose that the health arrangement that they were offering constituted an unregistered security, Compl. ¶ 19; (2) that Defendants failed to disclose that they were acting as investment advisors without the requisite registration, Compl. ¶ 19; (3) that Defendants failed to disclose that the health arrangement and disability plans would be commingled and that some of the money would be placed in speculative investments, id.; (4) that Defendants failed to disclose the alleged inadequacy of the funds backing the benefit plans and, in fact, affirmatively misrepresented the soundness of the funds, Compl. ¶¶ 20, 37; and (5) that Defendants affirmatively misstated that the CSR balances were properly calculated. Compl. ¶ 20. These allegations suffice to state with particularity the nature of the misstatements comprising the basis of the Commissioner's claims.

Furthermore, the Complaint alleges the roles of individual Defendants to the extent possible. See Compl. ¶¶ 11, 13, 14. Because Defendants have to a considerable extent interlocking directors, employees, officers, offices, and funds, it is impossible, without the benefit of further factual development and discovery, to determine which actions were

taken by and on behalf of each individual Defendant.  Given these circumstances, the Commissioner has sufficiently alleged the "who" element of the fraud.  Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 778 n.5 (7th Cir. 1994) ("Exceptions to individualizing Deefndants' roles to exist–e.g. . . . when such information is uniquely within the defendant's knowledge . . . ."); see also United States ex rel. Johnson v. Shell Oil Co., 183 F.R.D. 204, 206 (E.D. Tex. 1998) ("[W]here the fraud allegedly was complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied.").  "To approach the issue otherwise would allow the more sophisticated to escape liability . . . due to the complexity of their [alleged] scheme . . . ." Johnson, 183 F.R.D. at 207.

Defendants also contend that Count Four is subject to dismissal to the extent that it relies on Ind. Code § 23-19-5-1(1), see Compl. ¶ 36, because it fails to allege an "intent to defraud."  Manns v. Skolnik, 666 N.E.2d 1236, 1248 (Ind.Ct.App. 1996).  As the Seventh Circuit has ruled, however, despite the heightened pleading requirement of Rule 9(b), "states of mind" that comprise elements of underlying claims "may be pleaded generally." Transcontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP, 475 F.3d 824 (7th Cir. 2007) (quoting Robin v. Arthur Young & Co., 915 F.2d 1120, 1127 (7th Cir. 1990)); see also Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Defendants argue that, in contrast to other provisions on which the Commissioner bases his claims, Indiana Code § 23-19–5-1(1) does require an allegation of intent.

However, the Commissioner has relied upon multiple statutes as potential grounds for relief not all of which require this kind of particularized pleading, and "Rule 9(b) does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent." Midwest Commerce Banking Co. v. Elkhart City Centre, 4 F.3d 521, 523 (7th Cir. 1993) (citations omitted).  Thus, we conclude that the factual allegations contained in the Complaint outline and describe Defendants' wrongful conduct with sufficient particularity and precision to state claims for relief under the applicable statutory provisions.

"[U]nder Rule 9(b) perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." Petri v. Gatlin, 997 F.Supp. 956, 975 (N.D. Ill. 1997) (quotation omitted). The Complaint before us for review clearly places Defendants on notice sufficient to allow them to frame a responsive pleading.  Because the Complaint contains all of the necessary allegations to support the Commissioner's fraud claims, which are as we have said pled with sufficient particularity under the circumstances of the case, Defendants' Motion to Dismiss shall be denied as to Count Four of the Complaint.

2.     Counts I-III

The other counts in the Complaint require only the typical analysis under Federal

15

Rule of Civil Procedure 8.  As with the fraud allegation contained in Count I, Defendants

challenge Counts I, II, and III of the Complaint claiming that those claims do not

specifically allege which of the Defendants engaged in the wrongful conduct.  The

Commissioner need not, however, plead these three claims with particularity.  All that

they require is "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Further, as with Rule 9(b), courts assessing the

adequacy of a complaint under Rule 8 "typically allow the pleader an extra modicum of

leeway where the information supporting the complainant's case is under the exclusive

control of the defendant."  United States v. Baxter, Int'l, Inc., 345 F.3d 866, 882 (11th

Cir. 2003).

 As discussed previously, see supra § I.B.1, the Commissioner's Complaint lays out

the various types of wrongful conduct the Commissioner believes Defendants engaged in

and connects that conduct to the various Defendants through supportive factual

allegations contained throughout the Complaint that seem to us to be about as specific as

possible given the nature of the case.   Accordingly, we hold that each of these counts

"state[s] a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949.

 For the foregoing reasons, Defendants' Motion to Dismiss shall be denied in its

entirety.

## II.      Motion to Appoint Receiver and For Accounting[9]

## A.      Appointment of a Receiver

The Commissioner has moved for the appointment of a receiver to assume control of and take charge over Defendants' assets, and for an accounting of certain funds, which Defendants apparently invested in relation to the benefit plans that are the subject of this lawsuit.  The statutory basis for the appointment of a receiver in this context is Indiana Code § 23-19-6-3, the relevant portions of which provide:

> (a) If the commissioner believes that a person has engaged . . . in an act, practice, or course of business constituting and a violation of this article . . . or that a person has . . . engage[d] in an act, practice, or course of business that materially aids a violation of this article . . . the commissioner may maintain an action in the circuit or superior court in the county where the investigation or inquiry in question is being conducted to enjoin the act, practice, or course of business and to enforce compliance with this article or a rule adopted or order issued under this article.

> (b)      In an action under this section and on a proper showing, the court may: . . .
> > (2)      order other appropriate or ancillary relief, which may include:
> > > (A)    . . . accounting . . . and appointment of a receiver or conservator;
> > > (B)    ordering a receiver or conservator appointed under clause (A) to take charge and control of a respondent's property, including investment accounts and accounts in a depository institution, rents and profits; to collect debts; and to acquire and dispose of property . . . .

Ind. Code § 23-19-6-3.

_____

[9]Defendants have filed a Motion for Leave to File Surreply in Opposition to Plaintiff's Motion for Appointment of Receiver, contending that a Surreply is necessary to respond to arguments presented for the first time in Plaintiff's Reply.  Because Plaintiff's Reply contained entirely new arguments, Defendants' Motion for Leave is <u>GRANTED</u>.

As the Commissioner correctly asserts, this case falls within the terms of the above provision because the Complaint has alleged the existence of a "security" under Indiana law, as previously discussed.  Indiana law permits the appointment of a receiver when the State establishes a *prima facie* case of violation of the Indiana Uniform Securities Act. See Schrenker v. State of Indiana,  919 N.E.2d 1188, 1191 (Ind. Ct. App. 2010); see also State of Indiana ex rel Higbie, et al., v. Porter Circuit Court, et al., 428 N.E.2d 782, 784 (Ind. 1981) (holding that, under the Act, a court has the power to appoint a receiver when it has determined that unlawful conduct has taken place).

Although the Complaint arguably establishes a *prima facie* case of more than one violation of the Indiana Uniform Securities Act, the remedies the Commissioner seeks are expansive and perhaps unjustified in the context of this case.  The Indiana Supreme Court, in ruling on a motion to appoint a receiver, stressed that the "right to be secure in [one's] property" is "one of man's most cherished and sacred rights guaranteed by the United States Constitution" and "fundamental to every society in which men are free." Schrenker, 919 N.E.2d at 1191 (quoting Crippin Printing Corp. v. Abel, 441 N.E.2d 1002, 1005 (Ind. Ct. App. 1982)).  Accordingly, the power to appoint a receiver granted to the courts by Indiana Code § 23-19-6-3 is an "extraordinary and drastic remedy to be exercised with great caution."  Id. at 1193 n.4 (quoting Crippin, 441 N.E.2d at 1005). Courts should exercise the power to appoint a receiver "only when it is clear that no other full and adequate remedy exists whereby justice between the parties may be affected and a wrong prevented, and only in a clear case of extreme necessity."  Id. at 1192 (citing

18

Marriage of Gore, 527 N.E.2d 191, 195 (Ind. Ct. App. 1988)).

Although the Commissioner has requested that a receiver be appointed, their motion does not explain why such relief would be appropriate, beyond the allegation that Defendants violated the Indiana Uniform Securities Act.  Indeed, the only relevant considerations discussed in the briefing to the Court counsel against appointment of a receiver, most notably the fact that a receivership is not necessary to prevent ongoing violations because the Trust is no longer involved in the business that resulted in the transactions that the Commissioner contends violated the securities laws.  See Dec. of Sullivan [Docket No. 34-5] ¶ 11.

Further, since mid-2009, ISTA has been operating under a trusteeship: in May 2009, the NEA appointed Edward Sullivan to serve as trustee, and subsequently, the Marion Superior Court, holding that the Trust Agreement required nine trustees, appointed eight additional trustees to serve with Sullivan.  Accordingly, those responsible for the alleged wrongful acts are no longer in positions allowing them to manage the Trust.  That the state court intervened to properly allocate management responsibilities within ISTA also cancels any compelling need for the appointment of a receiver.

We conclude that the "radical step" of appointing a receiver is simply not warranted in the case at bar.  Higbie, 428 N.E.2d at 783.  The Commissioner provides no convincing rationale to offset the conclusion that this is no "clear case of extreme necessity."  Schrenker, 919 N.E.2d at 1192.  Nor does the Complaint contain any allegation of corruption or misappropriation of funds on the part of any Defendants.

Therefore, Plaintiff's Motion seeking creation of a receivership must be and is hereby <u>denied</u>.

B.    *Request for Accounting*

The Commissioner also requests an accounting in order to allow for a determination of what happened to at least $20,000,000 in CSR account funds, which the Commissioner alleges remain unaccounted for.  "An action for an accounting is equitable in nature with the purpose of adjusting the account of the litigants and of rendering complete justice in a single action."  Anacomp, Inc. v. Wright, 449 N.E.2d 610, 616 (Ind. Ct. App. 1983).  According to the Commissioner, in order to render complete justice for the Indiana school districts who had entrusted funds to the Defendants, an accounting is necessary.  The Commissioner seeks to determine what funds remain in the Trust, to determine the disposition of unaccounted funds, to trace the location of all funds entrusted to Defendants by Indiana school districts, and to identify appropriate resources to effect full restitution.

Motions for an accounting may be granted in order to assist regulators in the enforcement of securities laws.  See SEC v. Randy, 38 F.Supp.2d 657, 675 (N.D. Ill. 1999) (ordering an accounting to determine the defendant's liability under securities laws).  However, an accounting is generally deemed necessary only when ordinary discovery would prove inadequate.  E.g. Moore v. Waitt, 298 N.E.2d 456, 461 (Ind. Ct. App. 1973); Schirmer v. Principal Life Ins. Co., 2008 WL 4787568, at *4 (E.D. Pa. Oct.

29, 2008).

The Commissioner contends that an accounting is necessary because ISTA has admitted that funds entrusted to it were commingled, making the ascertainment of damages unduly complex, and because "ISTA has failed to provide any further information supporting its calculations of CSR claims."  Pl.'s Reply [Docket No. 59] at 11.  The Court fully understands and appreciates the fact that financial investigations and accounting-type calculations, especially relating to a claim of fraud, are complex and require a significant undertaking. The Commissioner has provided nothing, however, to support the assertion that Defendants have thus far been uncooperative in providing the relevant financial information.  Indeed, we are informed that, when, in December 2009, Defendants offered to provide the Commissioner with further information, the Commissioner declined that offer and instead filed the present motion for an accounting. Dec. of Foster ¶ 10 & Ex. 6; Second Dec. of Sullivan [Docket No. 34-6], Ex. D.  We have no reason to conclude, based on the record before us, that the information sought by the Commissioner in his request for an accounting cannot be secured through ordinary discovery.

Indiana Code § 23-19-6-3(b)(2) requires a "proper showing" to establish the necessity of an accounting.  Because the Commissioner has failed to make such a showing, and because it appears that the relevant information can be produced through ordinary discovery, the Commissioner's Motion for an accounting shall be <u>denied</u>.

### III.    *Motions for Oral Argument*

Both parties have filed Motions for Oral Argument, relating to various motions before the Court.  In our view, the record was adequately developed through extensive briefing to allow the Court to rule without requiring such a presentation by the parties.

### IV.    *Conclusion*

For the forgoing reasons, Defendants' Motion to Dismiss [Docket No. 18], filed on December 14, 2009, is <u>DENIED</u>; Plaintiff's Motion for Hearing [Docket No. 32], filed on December 28, 2009, is <u>DENIED</u>; Defendants' Motion for Oral Argument [Docket No. 35], filed on January 7, 2010, is <u>DENIED</u>; Plaintiff's Motion for Leave to file Surreply [Docket No. 39], filed on January 19, 2010, is <u>GRANTED</u>; Plaintiff's Motion for Appointment of Receiver/Conservator and For an Accounting [Docket No. 44], filed on February 8, 2010, is <u>DENIED</u>; Plaintiff's Motion for Hearing [Docket No. 49], filed on February 8, 2010, is <u>DENIED</u>; Defendants' Motion for Leave to File Surreply [Docket No. 62], filed on March 26, 2010, is <u>GRANTED</u>; and Defendants' Motion for Leave to File Surreply [Docket No. 63], filed on March 26, 2010, is <u>GRANTED</u>.

IT IS SO ORDERED.

Date: __04/28/2010__

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Arend J. Abel
COHEN & MALAD LLP
aabel@cohenandmalad.com

22

Alan S. Brown
FROST BROWN TODD LLC
abrown@fbtlaw.com

Abigail V Carter
BREDHOFF & KAISER P.L.L.C.
acarter@bredhoff.com

Jeremiah A. Collins
BREDHOFF & KAISER P.L.L.C.
jcollins@bredhoff.com

Douglas L. Greenfield
BREDHOFF & KAISER, P.L.L.C.
dgreenfield@bredhoff.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Alice McKenzie Morical
HOOVER HULL LLP
amorical@hooverhull.com

Eric S. Pavlack
COHEN & MALAD LLP
epavlack@cohenandmalad.com

Thomas E. Satrom
FROST BROWN TODD LLC
tsatrom@fbtlaw.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Joel E. Tragesser
FROST BROWN TODD LLC
jtragesser@fbtlaw.com

John M. West
BREDHOFF & KAISER, P.L.L.C.
jwest@bredhoff.com

Daniel  Zibel
BREDHOFF & KAISER, P.L.L.C.
dzibel@bredhoff.com